IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MELISSA S. GERALD,

          Plaintiff

              v.

UNIVERSITY OF PUERTO RICO, et al.,

        Defendants

CIVIL NO.  08-2084 (JAF/JP)

## OPINION AND ORDER

Before the Court is Defendants' joint motion for summary judgment (**No. 44**) and Plaintiff's opposition thereto (No. 70). On September 22, 2008, Plaintiff Melissa S. Gerald ("Gerald") brought the instant action against Defendants University of Puerto Rico ("University") and Edmundo Kraiselburd ("Kraiselburd") pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and under Puerto Rico Law 69, P.R. Laws Ann. tit. 29, § 1321-1341 ("Law 69") and Puerto Rico Law 17, P.R. Laws Ann. tit. 29, §§ 155-155m ("Law 17"), alleging sexual harassment, discrimination and retaliation.[1] For the reasons herein, Defendants' motion for summary judgment is **GRANTED.**

---

1. Previously, the Court dismissed Plaintiff's claims brought pursuant to Puerto Rico Law 100, P.R. Laws Ann. tit. 29, §§ 146-151 against all Defendants, Plaintiff's Title VII claims against Defendant Kraiselburd and Plaintiff's claims pursuant to Law 17 and Law 69 against Defendant University (No. 24).

CIVIL NO. 08-2084 (JAF/JP)        -2-

I.    **MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE**

The following material facts ("ISC UMF") were deemed uncontested by all parties hereto at the Initial Scheduling Conference held on October 6, 2010 (No. 32).

1.    Kraiselburd is a Professor of the Medical Sciences Campus of the University and Director of the Caribbean Primate Research Center ("CPRC").  Until June 12, 2007, he was Gerald's direct supervisor.

2.    Kraiselburd is a resident of Marbella St. No. 65, San Juan, Puerto Rico 00907.

3.    Gerald is a woman, who at the times relevant to this complaint was an Associate Professor of the Medical Sciences Campus of the University assigned to the CPRC, which operates the research station at Cayo Santiago in Humacao, Puerto Rico.

4.    Gerald was transferred to the Laboratory of Primate Morphology and Genetics ("LPMG") at the Medical Sciences Campus in Rio Piedras.

5.    The Deputy Director of the CPRC was Dr. Janis González.

6.    For approximately six years and until June 12, 2007 Plaintiff was the Scientist in Charge for the CPRC at Cayo Santiago in Humacao, Puerto Rico.

7.    Gerald resigned, by letter dated June 26, 2008, from her position at the University, effective August 2, 2008.

CIVIL NO. 08-2084 (JAF/JP)      -3-

8.   On August 9, 2007, Dr. José Carlo ("Carlo") designated an
     investigating officer, attorney Maritza Miranda
     ("Miranda"), to conduct an investigation and render a
     report.  On October 23, 2007, attorney Miranda issued her
     Report and Recommendation to Chancellor Carlo.

9.   The administrative charges filed against Gerald alleged
     Plaintiff of (a) professional incompetence or failure to
     comply with the duties of a position, including the
     deliberate reduction of productivity (Section 35.2.1 of
     the University's General Regulations), and (b) the filing
     of a complaint based upon charges known to be false and
     with the intent to damage the intended respondent (Section
     35.2.16), that is, with the intent to damage Kraiselburd.

10.  Carlo, Chancellor of the Medical Sciences Campus at the
     time, sent Gerald a letter advising her that an Official
     Examiner, Julio Nigaglioni, Esq., had been named to
     preside over a formal hearing against her for the
     administrative charges.

11.  Gerald appealed the Chancellor's dismissal of the sexual
     harassment complaint to the President of the University of
     Puerto Rico.  The Appeal was received, Melissa S. Gerald
     v. Recinto de Ciencias Médicas, docketed under Appeal No.
     90-905 and an Examining Officer designated, Hon. Dora
     Peñagarícano.

CIVIL NO. 08-2084 (JAF/JP)        -4-

12.  The hearing on the appeal of the dismissal of the sexual
     harassment complaint was held by newly appointed Examiner
     Nelsa Lopez Colon on May 4, 2010.  The sole testimony was
     that of former Chancellor Carlo.

13.  The President of the University has not yet made a
     decision regarding Plaintiff Gerald's administrative
     appeal.

14.  The case – at the Chancellor's Office administrative level
     – <u>Recinto de Ciencias Médicas v. Melissa S. Gerald</u>, was
     docketed under case number 2007-003 (JNA).  For practical
     considerations and in deference to the University
     President's appeal procedure, the Chancellor has stayed
     the administrative charges procedure.

15.  Plaintiff filed a complaint with the U.S. Equal Employment
     Opportunity Commission alleging sexual harassment (quid
     pro quo and hostile work environment) and retaliation.
     The EEOC issued a Dismissal and Notice of Right to Sue
     Letter on June 23, 2008.

     The following facts are deemed uncontested ("UMF") by the Court
because they were included in the motion for summary judgment and
opposition and were either agreed upon, or they were properly
supported by evidence and not genuinely opposed.

CIVIL NO. 08-2084 (JAF/JP)        -5-

1.    The University was organized "as an organic system of
      higher education" pursuant to the provisions of Act No. 1
      of January 20, 1966, 18 P. R. Laws Ann. tit 18, § 603(a).

2.    The Medical Science Campus ("Recinto de Ciencias Médicas")
      of the University is an institutional unit of the
      University with no legal authority to sue or be sued.

3.    The University's General Regulations prohibit all kinds of
      discrimination, especially sex discrimination. The General
      Regulations are not only available to the University's
      employees, but to the public at large, since they
      constitute a public document.

4.    Since 1988, the University has a well established and
      implemented policy against sexual harassment which
      emanates from the University's General Regulations.

5.    Circular Letter No. 95-06 to all University Community
      establishes the procedures available to all employees for
      reporting, investigating, preventing and eliminating any
      act that may constitute sexual harassment.

6.    In addition, the University continually gives the
      employees sexual harassment trainings in which the
      prohibited conduct is described. For example, in 2008 at
      least three (3) sessions of a seminar titled "Sexual
      Harassment" were offered to the employees of the Medical

CIVIL NO. 08-2084 (JAF/JP)        -6-

Sciences Campus. Kraiselburd and Gerald attended the seminar.

7.   The CPRC is a research, training and education unit of the University of Puerto Rico, Medical Sciences Campus. It was established in 1970 and it is a world renowned center for the study of non-human primates. The CPRC consists of four integrated facilities: (1) Cayo Santiago Field Station, a unique free-ranging island colony of Indian-origin rhesus monkeys in Humacao, Puerto Rico; (2) the Sabana Seca Field Station, CPRC's headquarters, which houses rhesus monkeys in various outdoor configurations for biomedical and behavioral studies that are not feasible on free-ranging animals; (3) the Laboratory of Virology and Genetics, located in the Medical Science Campus of the University in San Juan; and (4) the Laboratory of Primate Morphology and Genetics, also located in the Medical Science Campus of the University in San Juan. The CPRC is supported by a core grant from the National Institute of Health ("NIH"), the National Center for Research Resources ("NCRR"), and the University.

8.   Kraiselburd is the Principal Investigator and Director of the CPRC.

CIVIL NO. 08-2084 (JAF/JP)        -7-

9.  As Principal Investigator and Director of the CPRC, Kraiselburd oversees and supervises the operation of the four facilities that integrate the CPRC.

10. As Principal Investigator and Director of the CPRC of the University, Kraiselburd is accountable to the University and the NIH and the NCRR for the use of funds for the purposes and under the conditions requested in the corresponding grant applications.

11. The daily operation of the Cayo Santiago Field Station was run by the Scientist in Charge of the Cayo Santiago Field Station.

12. As Principal Investigator and Director of the CPRC of the University, Kraiselburd was the supervisor of Gerald during her tenure as Scientist in Charge of the Cayo Santiago Field Station.

13. As Scientist in Charge of the Cayo Santiago Field Station, Gerald had the following duties and responsibilities:

    a.  daily operation of the Cayo Santiago Field Station of the CPRC.

    b.  supervision and follow up the genetic data analysis of the colony of monkeys at the Cayo Santiago Field Station.

CIVIL NO. 08-2084 (JAF/JP)        -8-

c.    maintenance, organization and control of the genetic database for the colony of monkeys at the Cayo Santiago Field Station.

d.    maintenance of the computerized database for the Cayo Santiago population including the audit list, birth list, death list, madrilenes, etc., and preparation of the monthly census reports.

e.    management and assignment of duties for the Cayo Santiago personnel to optimize the health and demographic data collection on the population, prepare skeletons, conduct the annual trapping, and to maintain the physical plant and equipment (corrals, water system, workshops, boats, laboratory, housing unit, etc.).

f.    assist the veterinarian with the planning and execution of the annual trapping conducted each January-February.

g.    monitor billing detail; inform the Administrator of the CPRC of all the services offered to researchers at Cayo Santiago; if a prearrangement in terms of cost is proposed, the Scientist in Charge was responsible of consulting the Director of the CPRC to obtain his authorization for any billing prearrangement.

CIVIL NO. 08-2084 (JAF/JP)      -9-

h.   link between the local, national and international scientific community and the Director of the CPRC.

i.   report at the weekly staff meetings all incidences at the Cayo Santiago Field Station.

j.   coordinate daily activities of the census and determine if any animal needs to be removed from the colony.

k.   responsible for keeping track of accidents and possible infection with herpes B.

l.   ask the Director of the of the CPRC for resources to provide for the immediate needs of Cayo Santiago.

m.   write competitive research proposals to obtain external funding.

n.   develop and conduct a research program or project at Cayo Santiago through independent or Core Grant funding.

o.   assist the Director of the CPRC in the preparation of reports and grant proposals, and make general presentations about the Cayo Santiago facility at site visits.

p.   work with the administrative director to formulate budgets.

q.   make an active effort to attract new behavioral and noninvasive biomedical research projects to Cayo

CIVIL NO. 08-2084 (JAF/JP)      -10-

Santiago from scientists in Puerto Rico and elsewhere.

r.   provide assistance to and interact with visiting scientists and students in order to facilitate their research and education while at Cayo Santiago.

s.   Interact with USDA, APHIS, Veterinary Services inspectors and members of the Institutional Animal Care and Use Committee ("IACUC") as deemed necessary by the veterinarian or Director.

14.   According to the General Rules and Regulations of the University the teaching staff with executive or administrative responsibilities, as well as those engaged in scientific research, shall be governed by the regular schedule of the non-teaching staff.

15.   Most of the communications between Plaintiff and Kraiselburd were by telephone or e-mail.

16.   More than once, Kraiselburd warned Plaintiff that she could not exchange information with third parties outside the CPRC without his prior approval.

17.   Use policies of the CPRC, as stated in the NIH grant for the year 2005-2010, provides for the charge of $35/monkey to capture or sample animals at both, the Cayo Santiago Field Station and the Sabana Seca Field Station.

18.   Use policies of the CPRC, as stated in the NIH grant for

CIVIL NO. 08-2084 (JAF/JP)        -11-

> the year 2005-2010, provides for the charge of $800/month in bench fees.

19. Standard operating procedures of the Cayo Santiago Field Station, as drafted by Gerald, established an $800/month in bench fees and $35 per monkey in trapping fees.

20. Gerald did not bill researchers for the use of the housing unit rented by the CPRC from the origin of the rental contract.

21. Gerald did not bill bench fees to some selected researchers for use of the Cayo Santiago facilities without authorization from the Director.

22. Gerald did not bill trapping fees to some selected researchers without authorization from the Director.

23. On August 3, 2007, Gerald presented the University with a complaint of sexual harassment against Kraiselburd.

24. Gerald availed herself of the procedure in the policies of the University, and presented a sexual harassment complaint on August 2007. Therefore, she had knowledge of the University's Policies prohibiting sexual harassment.

25. In approximately two months, Gerald's complaint was investigated, which required interviewing nine people and a report was issued.

26. As part of the investigation, Miranda, the investigating officer, interviewed Gerald and Kraiselburd. In addition,

CIVIL NO. 08-2084 (JAF/JP)        -12-

she interviewed: James Ayala, Dr. Sonia Quirós, Dr. María Moscoso, Janet Rivera, Vivian Vázquez Pérez, Ingrid Acevedo, and Dr. Janis González, who were persons whose name came up during the investigation. Kraiselburd denied the allegations.

27. On October 22, 2007, Miranda issued a report with her findings and recommendations. In essence, she determined that sexual harassment had not taken place. She found that at times, both Gerald and Kraiselburd, made jokes with sexual connotations and used obscene language.

28. The General Regulations of the University provide that the filing of a claim knowing that it is false, with the intention of harming the defendant, is a violation of the rules of conduct subject to disciplinary sanctions.

29. Gerald filed an Appeal before the President of the University of Puerto Rico.

30. Gerald alleges to have sustained a sexual affair with Kraiselburd for a whole week during a trip to Cuba in the year 2005.

31. During her deposition, Plaintiff admitted that she made jokes with sexual connotations and sent jokes to Kraiselburd.

32. Chancellor Carlo issued a resolution dismissing Gerald's Complaint and informing her that an Examining Officer had

CIVIL NO. 08-2084 (JAF/JP)        -13-

> been named to preside over a formal hearing against her,
> as per the University's Regulations.

33. The investigator recommended that Gerald be transferred to
    another area.   Chancellor   Carlo   implemented   this
    recommendation by assigning her to the LPMG.

34. The LPMG is located in the building of the Medical
    Sciences Campus, at the Puerto Rico Medical Center.

35. Since on or around 2003, Kraiselburd's office is located
    at the building of the Comprehensive Center of Cancer, not
    at the building of the Medical Sciences Campus.

36. Prior to her removal as Scientist in Charge of the Cayo
    Santiago Field Station of the CPRC, Plaintiff never
    complained of sexual harassment in the workplace.

37. After the alleged incident of April 2007, Plaintiff
    maintained uninterrupted communication with Kraiselburd,
    originated communications to Kraiselburd to send him jokes
    and to comment about non work related issues, and
    continued with her usual work routine.

38. After the alleged incident of May 29, 2007, Plaintiff
    maintained uninterrupted communication with Kraiselburd,
    and continued with her usual work routine.

39. According to Gerald, the third incident was on June 7,
    2007 during a conversation between her, Kraiselburd, and
    Janis González. With respect to the third incident,

CIVIL NO. 08-2084 (JAF/JP)      -14-

Miranda, concluded that according to the witnesses, it was Gerald who started the joke with sexual connotations, and that Kraiselburd responded jokingly.

40. After the alleged incident of June 7, 2007, Plaintiff maintained uninterrupted communication with Kraiselburd and continued with her usual work routine.

41. For the past twenty five years the CPRC has had an External Advisory Council. The members of the Advisory Council are appointed by and report to the Chancellor of the MSC.

42. Dr. Richard Rawlins and Dr. Mathew Kessler are members of the External Advisory Committee that oversees the operation of the CPRC, including the Cayo Santiago Field Station.

43. During her deposition, Plaintiff admitted that after she resigned from her job at the University, she was not out of work a single day.

44. Plaintiff currently works as a Scientific Review Offices at the Center for Scientific Review at the NIH. Her actual salary is $128,000.00.

45. Gerald has a Ph.D. in Anthropology from UCLA, 1999 and was a post-doctorate fellow in Neuro-Endocrinology and Behavior at the National Institutes of Health, 1999-2001. Gerald has numerous publications that are all relevant to

CIVIL NO. 08-2084 (JAF/JP)      -15-

various studies of behavior observed in the rhesus macaques.

46. When Gerald first signed with the University it was through a contract effective July 1, 2001 until June 30, 2002 wherein she was required to render services at the UCM of the MSC, "Department of the CPRC", as Teaching Personnel. According to the contract signed she was supposed to work 37.5 hours a week in a 7:00 a.m. to 3:00 p.m. schedule. Her compensation package included a monthly base salary of $3,965.00 plus an $800 a month bonus.

47. Pursuant to this contract, Gerald's duties were then to (a) direct the collection of data from different scientific investigations that are conducted in Cayo Santiago, (b) publish results of investigations conducted at the Primates Center, (c) submit investigation proposals to different federal agencies to obtain funding , (d) provide assistance to students and visiting scientists in order to facilitate the investigation and/or education while at Cayo, (e) in charge of receiving the inspector and member of SDA, ALAAS, BIH, (f) direct a thesis and be a member of the Thesis Committee of the University and other crediting institutions, and (g) give courses in an area of specialty.

CIVIL NO. 08-2084 (JAF/JP)        -16-

48.  The package offered included a tenure-track appointment at
     the rank of Assistant Professor with advancement toward
     Associate Professorship. The professorship would be under
     the "appropriate Department within the Deanship of
     Medicine," reporting directly to the Director of the CPRC.
     The salary offer was $47,500, with a bonus of $5,000, plus
     fringe benefits.

49.  A year after being hired, Gerald was appointed as
     Assistant Professor, at the Chancellorship, Unit of
     Comparative Medicine, Primates Center.

50.  After five years as Scientist in Charge, Gerald was
     evaluated for promotion to the rank of Associate
     Professor.

51.  Then the personnel committee of the School of Medicine
     favorably recommended her rank promotion.

52.  After that, the faculty committee evaluated the rank
     promotion and recommended it.

53.  Consequently, the Dean of the School of Medicine
     recommended to the Chancellor of the Medical Sciences
     Campus that Gerald be promoted to the rank of Associate
     Professor.

54.  Effective July 1, 2007, Gerald was promoted to Associate
     Professor.

CIVIL NO. 08-2084 (JAF/JP)        -17-

55.  As of December 31, 2006, "it was the general consensus [of
     the Advisory Council] that Dr. Gerald [wa]s doing an
     excellent job as Scientist-in-Charge in promoting both the
     CPRC and Cayo Santiago internationally, nationally and in
     Puerto Rico."

56.  On February 28, 2007, Gerald received an email from David
     Dugan, Chairman of Windfall Films, requesting
     authorization to film at Cayo Santiago a feature
     documentary about the life and work of the great
     evolutionary biologist, E.O. Wilson, whom had visited Cayo
     fifty years earlier to supervise Stuart Altman's Ph.D work
     on primate behavior. E.O. Wilson's work at Cayo with
     Stuart Altman culminated in the publication of the seminal
     work "Sociobiology". The filming would bring Wilson and
     Altman to revisit Cayo Santiago.

57.  Gerald coordinated the details of Wilson's visit directly
     with the Film crew.

58.  A dinner was coordinated for April 15, 2007 for Chez
     Daniel in Palmas del Mar including E.O. Wilson, Stuart
     Altman, Kraiselburd and Gerald.

59.  During the coordination of the Cayo visit for John Lynch
     of the NIH, on May 24, 2007 Kraiselburd cautioned Gerald
     that they had to "formally talk" because he had "learned
     that [he] [could] not depend on [her]". Gerald was also

CIVIL NO. 08-2084 (JAF/JP)        -18-

warned that Kraiselburd was thinking about terminating her employment.

60. Gerald met with Kraiselburd at his office on May 29, 2007.

61. On June 12, 2007, at 8:56 p.m., Kraiselburd removed Gerald from the position of Scientist in Charge.

62. According to the June 12, 2007 email, the reason for the decision was budgetary considerations.

63. The June 29, 2007 letter indicated that "after evaluating the administrative operations of Cayo Santiago, and in order to improve the overall administrative and scientific operations at the CPRC, it [was] determined that a restructuring of. . .general operations [was] necessary".

64. Consequent to the June 29, 2007 letter, Gerald was relieved of all administrative duties and colony management responsibilities and her position was demoted to Resident Scientist. No mention of failure to perform or noncompliance is made.

65. At the hearing held on the appeal filed by Gerald in the Office of the President of the University, Chancellor Carlo testified. He testified that on August 3, 2007 he personally met with Gerald who was visibly upset.

66. A written complaint was filed on August 4, 2007.

67. On February 19, 2008, Kraiselburd filed a complaint for defamation and libel in the Court of First Instance of

CIVIL NO. 08-2084 (JAF/JP)      -19-

> Puerto Rico, Superior Court, Humacao Part, <u>Edmundo</u>
> <u>Kraiselburd v. Melissa S. Gerald</u>, Civil No. HSCE-2008-0224
> (208).

68. Gerald resigned to the Medical Sciences Campus of the
    University by letter dated June 26, 2008.

## II.  <u>**LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**</u>

Summary judgment serves to assess the proof to determine if
there is a genuine need for trial. <u>Garside v. Osco Drug, Inc.</u>,
895 F.2d 46, 50 (1st Cir. 1990). Pursuant to Rule 56(c) of the
Federal Rules of Civil Procedure, summary judgment is appropriate
when "the record, including the pleadings, depositions, answers to
interrogatories, admissions on file, and affidavits, viewed in the
light most favorable to the nonmoving party, reveals no genuine issue
as to any material fact and the moving party is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u>
<u>Zambrana-Marrero v. Suárez-Cruz</u>, 172 F.3d 122, 125 (1st Cir. 1999)
(stating that summary judgment is appropriate when, after evaluating
the record in the light most favorable to the non-moving party, the
evidence "fails to yield a trial worthy issue as to some material
fact"); <u>Goldman v. First Nat'l Bank of Boston</u>, 985 F.2d 1113, 1116
(1st Cir. 1993); <u>Canal Ins. Co. v. Benner</u>, 980 F.2d 23, 25
(1st Cir. 1992). The Supreme Court has stated that "only disputes
over facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary judgment.

CIVIL NO. 08-2084 (JAF/JP)        -20-

Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2253, 91 L. Ed. 2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553; Goldman, 985 F.2d at 1116.

## III. **ANALYSIS**

Defendants argue that summary judgment is appropriate in this case because Plaintiff has not provided evidence sufficient to support her Title VII claims for sexual harassment, discrimination, retaliation, and constructive discharge against Defendant University and state law claims against Defendant Kraiselburd.

CIVIL NO. 08-2084 (JAF/JP)      -21-

### A.   Title VII Claims Against Defendant University

Title VII protects against discrimination in the workplace on the basis of certain protected categories, including sex. 42 U.S.C. § 2000e *et seq.* Plaintiff alleges Title VII discrimination claims on the basis of: (1) hostile work environment; (2) quid pro quo;(3) retaliation; and (4) constructive discharge.

### 1.   *Hostile Work Environment*

To establish a hostile work environment claim, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based upon a protected category; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) that the offending conduct was both objectively and subjectively offensive; and (6) that some basis for employer liability has been established. Valentín-Almeyda v. Municipality of Aquadilla, 447 F.3d 85, 94 (1st Cir. 2006).

As to the first element of a hostile work environment claim, it is uncontested that Gerald is a member of a protected class because she is a woman. As to the second element, Plaintiff cites to three incidents of alleged sexual harassment committed by Defendant Kraiselburd: (1) that on April 15, 2007, after a group dinner, Kraiselburd invited Gerald to his hotel room; (2) that on May 29, 2007, Gerald met with Kraiselburd in his office and that he first

CIVIL NO. 08-2084 (JAF/JP)        -22-

touched then grabbed her breast and made sexually suggestive sounds;
and (3) that on June 7, 2007, Kraiselburd made a remark to Gerald in
front of coworkers about engaging in sexual relations. Defendants
argue that Gerald's claim fails to show that the alleged sexual
conduct by Kraiselburd was unwelcomed. Defendants produced evidence
that Gerald did not report any of these alleged incidents of sexual
harassment when they occurred, that Gerald and Kraiselburd often
engaged in personal conversations and jokes with sexual connotations
and used obscene language with each other and in front of coworkers,
and that a coworker and the Associate Director and Staff Scientist,
Janis Gonzalez, emailed both of them about her discomfort over these
conversations. Defendants also pointed to Plaintiff's allegation that
she and Kraiselburd had an affair in 2005. Further, Defendants
presented evidence that after the alleged incidents Gerald continued
to email Kraiselburd jokes and sustain conversations about issues
unrelated to work. Gerald admitted that after the incidents in April
2007 and in May 2007, she maintained uninterrupted communication with
Kraiselburd. She also testified in her deposition that she would
continue working with Kraiselburd and wanted to be reinstated to her
position as Scientist in Charge.

        Regarding the unwelcomeness of the conduct, Gerald, in her
opposition, argues that the determination of unwelcomeness is fact
intensive and credibility oriented, and thus, is not proper for
disposition at summary judgment. As to the first incident where

CIVIL NO. 08-2084 (JAF/JP)        -23-

Kraiselburd invited Gerald to his hotel room, Gerald stated that she declined his invitation. Regarding the third incident, the evidence indicated that Gerald started the conversation by making a joke of a sexual nature, and Kraiselburd's remark was in response to Gerald's comment. He admitted to making a comment of a sexual nature but meant it jokingly. With regard to the second incident where Kraiselburd allegedly grabbed Gerald's breast, Gerald testified that she was upset and told a coworker about the incident. The Court finds that the evidentiary record is sufficient to raise at least a factual question as to whether Gerald was subject to unwelcome harassment.

As to the third element, whether the sexual nature of the comments and actions by Kraiselburd were based on Gerald's sex, Defendants do not make any arguments in their motion as to whether or not this element has been met. As such, the Court finds this element to be uncontested.

To satisfy the fourth element, Plaintiff must show that the harassment she suffered was sufficiently severe or pervasive. There is no mathematically precise test for determining whether offensive conduct in the workplace is sufficiently severe or pervasive so as to rise to the level of a hostile work environment. Marrero v. Goya of Puerto Rico, 304 F.3d 7, 18 (1st Cir. 2002) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993)). Rather, courts must consider a variety of factors, including the frequency of the discriminatory conduct; its severity; whether it is physically

CIVIL NO. 08-2084 (JAF/JP)        -24-

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Id. "'Subject to some policing at the outer bounds,' it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." Id. at 19 (quoting Gorski v. N.H. Dep't of Corrections, 290 F.3d 466, 474 (1st Cir. 2002)).

As discussed above, Plaintiff has alleged three incidents of sexual harassment committed by Kraiselburd. In addition, Plaintiff also points to emails sent by Kraiselburd, and cites to phrases from Kraiselburd's emails such as, "relax", "you only live once" and "the offer is still on the table" to support her claim of sexual harassment. After reviewing the emails referred to by Plaintiff, the Court finds that Plaintiff's references to incomplete portions of the emails are misleading. In context, the phrases are not of a sexual nature but for the most part are responses to emails sent by Gerald to Kraiselburd. While Kraiselburd's comments and emails may be unprofessional, they do not constitute sexual harassment or discrimination. See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 47 (1st Cir. 2003)(explaining that "a supervisor's unprofessional managerial approach and accompanying efforts to assert her authority are not the focus of the discrimination laws").

CIVIL NO. 08-2084 (JAF/JP)      -25-

Nevertheless, viewing the evidence as a whole and given the totality of the circumstances, the Court finds that the incidents alleged are not sufficiently severe or pervasive to be actionable under Title VII. See Quiles-Quiles v. Henderson, 439 F.3d 1, 8-9 (1st Cir. 2006) (upholding the jury's finding that employee was subjected to a hostile work environment where the harassment included constant ridicule, "threats ... screaming tirades ... and efforts ... to interrupt [employee's] pursuit of a union grievance"); Noviello v. City of Boston, 398 F.3d 76, 93-94 (1st Cir. 2005) (finding sufficient evidence that plaintiff was subjected to a hostile work environment where plaintiff was falsely accused of misconduct, subjected to "work sabotage" and harassing insults, and endured "continued tormenting" and physical threats); Morgan v. Massachusetts General Hospital, 901 F.2d 186, 192-93 (1st Cir. 1990)(conduct not sufficiently severe or pervasive to implicate Title VII liability where male co-worker stood behind plaintiff and bumped him, looked at plaintiff's privates in the restroom, and "hung around him a lot"); Cross v. Prairie Meadows Racetrack and Casino, Inc., 615 F.3d 977, 981 (8th Cir. 2010)(finding that four discrete incidents over employee's two-year period of employment were insufficient where harassment included that supervisor grabbed employee's hair, touched her breast, "responded in an angry and physically threatening manner when she rebuffed his request that they be 'more' than friends," and that supervisor spread a rumor that she had performed oral sex on

CIVIL NO. 08-2084 (JAF/JP)      -26-

him). Here, the evidence in the record shows that Gerald and Kraiselburd have worked together for six years, appeared to maintain a close relationship and even friendship throughout those years, and often made jokes and comments of a sexual nature to each other and in front of coworkers. Gerald and Kraiselburd also allegedly sustained a sexual relationship in the past. Further, Kraiselburd worked from a different location than Gerald and the majority of their communications were over email. On this element, the Court finds that a reasonable jury could not find for Plaintiff on the basis of the evidentiary record that the alleged harassment was sufficiently severe and pervasive. From the evidence, it is clear that Plaintiff chose to engage with Kraiselburd in conversations and jokes of a sexual nature, and in the six years working together never once complained about his conduct even after another coworker confronted both of them about their "off color remarks" and "jokes in bad taste." Defs.' Exh. 37. Moreover, Gerald testified that she would be willing to continue working with Kraiselburd if she were reinstated to her position as Scientist in Charge. Her willingness to continue working with him demonstrates that she did not feel threatened by him and that his alleged conduct did not unreasonably interfere with her work performance or affect the conditions of her employment. In fact, Plaintiff was promoted to Associate Professor in July 2007, and continued working at the University until almost a year later.

CIVIL NO. 08-2084 (JAF/JP)      -27-

While often the question of whether the alleged conduct was sufficiently severe and pervasive enough to be actionable under a Title VII hostile work environment claim is a question for the jury, in some cases, such as the case at hand, a court must police the outer bounds. See Marrero, 304 F.3d at 18.  Given the particular facts of this case and based on the totality of the circumstances, the incidents as alleged by Plaintiff without more do not fall within the purview of a Title VII hostile work environment claim.

Having found that Plaintiff failed to meet the fourth element of a hostile work environment claim, Plaintiff has failed to establish a prima facie case. Accordingly, the Court will not consider the remaining elements.

### 2.   *Quid Pro Quo*

Defendant argues that Plaintiff cannot establish that she was subject to quid pro quo sexual harassment in violation of Title VII. Quid pro quo sexual harassment exists "where a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate, or punishes that subordinate for refusing to comply." Lipsett v. University of Puerto Rico, 864 F.2d 881, 897 (1st Cir. 1988); see also Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49 (1st Cir. 2000).

To prevail on a quid pro quo claim of sexual harassment, a plaintiff must assert and prove: (1) the plaintiff-employee is a member of a protected group; (2) the sexual advances were unwelcome;

CIVIL NO. 08-2084 (JAF/JP)        -28-

(3) the harassment was sexually motivated; (4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment; and (5) respondeat superior liability has been established. Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 778-82 (1st Cir. 1990); Landrau Romero v. Caribbean Restaurants, Inc., 14 F.Supp.2d 185, 189 (D.P.R. 1998); see also Highlander v. K.F.C. Nat. Management Co., 805 F.2d 644 (6th Cir. 1986).

      As to the first three elements, as discussed above, the Court finds that Plaintiff has presented sufficient evidence to support a finding in her favor on these elements. As to the fourth element, in her opposition, Plaintiff states that a "tangible job benefit or detriment was conditioned to the employee submitting to the supervisor's sexual blackmail and that adverse consequences followed her refusal to submit." Pl.'s Opp. at 15. From what the Court can decipher from her opposition, Plaintiff argues that her refusal of Kraiselburd's sexual advances caused her to be removed from her position as Scientist in Charge.

      Defendants argue that Plaintiff has not shown that she suffered a tangible employment action as a result of her refusal submit to Kraiselburd's alleged sexual advances. Defendants present evidence that the decision to remove Gerald from the position of Scientist in Charge was due to issues with her performance. Gerald exhibited disrespectful, unprofessional conduct and continuously challenged Kraiselburd's authority, and did not comply with her responsibilities

CIVIL NO. 08-2084 (JAF/JP)      -29-

as Scientist in Charge. Defendants presented evidence that she was often not physically present at Cayo Santiago, and would leave early or work from home. In addition, Defendants presented evidence that she had certain administrative duties as Scientist in Charge, for example overseeing the billing of bench and trapping fees and the genetics database, and failed to perform these duties. Further, in February 2007, she insulted a male employee by calling him a "cabron" in front of other workers. Defendants presented evidence that she challenged Kraiselburd's authority as Director, for example, by sharing information with outsiders without his permission. Gerald admits that she was warned several times to seek permission from Kraiselburd before sharing information with third parties outside of the University.

According to Plaintiff, Kraiselburd had given her a recommendation for a rank promotion in September 2006 and she had also received a positive evaluation from the Personnel Committee of the School of Medicine and the Faculty Committee in October 2006 and March 2007, respectively. Plaintiff disputes that certain duties particularly those associated with the genetics database and the billing were required of her as Scientist in Charge. As to the employee she called a "cabron", Plaintiff argues that he was not offended, and that Kraiselburd was looking for a way to fire her so he requested that the employee write a report about the incident, and cites to the testimony of a coworker, Felix Roman Oquendo

CIVIL NO. 08-2084 (JAF/JP)        -30-

("Oquendo"), for support. Oquendo testified that Kraiselburd brought up the incident to him and asked him about it months after it had happened. As to Defendants' claim that she failed to visit Cayo Santiago, she testified that she was not told how many hours she had to work a week or how many times she had to go to Cayo Santiago or be at her office in Punta Santiago. Further, Plaintiff claims that the electronic record confirms Kraiselburd "was insecure regarding his perceived authority *vis a vis* [Gerald's] projection in the scientific and general community as 'Cayo Star'." Pl.'s Opp. at 24.

Notwithstanding Plaintiff's explanations and arguments, she fails to present evidence that Kraiselburd either implicitly or explicitly conditioned her continued employment as Scientist in Charge on her compliance with his alleged sexual requests. See Bonenberger v. Plymouth Tp., 132 F.3d 20, 28 (3rd Cir. 1997)(finding that no quid pro quo threat existed where defendant "did not suggest, either by word or action, that sexual favors were the price for keeping her job" and holding that "quid pro quo harassment requires a direct conditioning of job benefits upon an employee's submitting to sexual blackmail, or the consideration of sexual criteria in work evaluations"); see also Lee-Crespo v. Schering-Plough Del Caribe Inc., 231 F.Supp.2d 420, 430 (D.P.R. 2002) *aff'd* 354 F.3d 34, 39 (1st Cir. 2003)(dismissing quid pro quo claim where "[t]here [wa]s no evidence in the record that [defendant] or any other supervisor used a threat of employment benefits in exchange for sexual favors").

CIVIL NO. 08-2084 (JAF/JP)       -31-

Plaintiff makes conclusory, unsupported statements that her rejection of Kraiselburd's sexual advances led to the June 12th termination email, then her partial reinstatement on June 18th and then her demotion to Resident Scientist on June 29th and then to Staff Scientist on December 4th.

At the summary judgment stage, Plaintiff cannot rest on mere conclusory statements. Magarian v. Hawkins, 321 F.3d 235, 240 (1st Cir. 2003)("Conclusory allegations, improbable inferences, and unsupported speculation are insufficient to defeat summary judgment.")(internal quotations omitted). No evidence has been presented by Plaintiff that could support an inference that her employment was conditioned on compliance with Kraiselburd's alleged sexual requests. If Plaintiff did fear for her job or actually believe that her refusal of Kraiselburd's sexual advances would have adverse consequences then she would have acted immediately and not waited until August to report the incidents.

Accordingly, Plaintiff fails to present sufficient evidence to support her claim for quid pro quo sexual harassment.

### 3.   *Retaliation*

Plaintiff claims that she was retaliated against because she filed an administrative complaint for sexual harassment against Kraiselburd. Title VII's anti-retaliation provision provides as follows:

CIVIL NO. 08-2084 (JAF/JP)        -32-

> It shall be an unlawful employment practice for an
> employer to discriminate against any of his employees or
> applicants for employment . . . to discriminate against
> any individual, or for a labor organization to
> discriminate against any member thereof or applicant for
> membership, because he has opposed any practice made an
> unlawful employment practice by this subchapter, or
> because he has made a charge, testified, assisted, or
> participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). In order to establish a *prima facie* case of retaliation, a plaintiff must show that she: (1) engaged in a protected activity; (2) experienced some materially adverse action; and (3) the adverse action was causally linked to her protected activity. Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 91 (1st Cir. 2007); McDonough v. City of Quincy, 452 F.3d 8, 17 (1st Cir. 2006). Protected conduct includes not only the filing of administrative complaints, but also complaining to one's supervisors. Benoit v. Technical Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003). An adverse employment action must materially change the conditions of the plaintiff's employment. Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) (citing Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)).

Once the plaintiff has made a *prima facie* showing of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for its employment decision. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 26 (1st Cir. 2004); McDonough, 452 F.3d at 17 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792

CIVIL NO. 08-2084 (JAF/JP)      -33-

(1973)).  If the defendant meets this burden, the plaintiff must show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus. Calero-Cerezo, 355 F.3d at 26.  In determining pretext, there is "no mechanical formula." McDonough, 452 F.3d at 18 (citing Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003)). Pretext can be proven in many ways. Id.

As to the first element, Plaintiff engaged in a protected activity when she filed her administrative complaint of sexual harassment. As to the second element, Plaintiff claims that the adverse actions she suffered are: (1) the application of a constitutionally defective administrative investigative procedure; (2) the filing of administrative charges after she filed her administrative sexual harassment complaint; and (3) Plaintiff's demotion to Staff Scientist and transfer to the LPMG by Kraiselburd in December 2007. Defendants counter that Plaintiff did not suffer an adverse employment action.

Plaintiff claims that the findings by the investigating officer were tainted because the administrative investigative procedure applied was a violation of due process of law. Also, she claims that as a tenure-track professor of the University, Gerald has a property interest in her position. Plaintiff, however, fails to provide specific facts and developed argumentation to support that her constitutional rights were violated. Even if she had supported this

CIVIL NO. 08-2084 (JAF/JP)        -34-

claim with more than conclusory statements, Plaintiff appears to be making a new claim for a constitutional violation. Having failed to include such a claim in her complaint, Plaintiff has waived any such claim for a constitutional violation. Plaintiff may not for the first time in her opposition to a motion for summary judgment bring in new claims. According to the report of the investigation, the investigating officer, Attorney Miranda, interviewed nine people, including Gerald and Kraiselburd. Gerald met with the investigator and also provided a sworn statement. Nevertheless, she complains that she was not permitted to reply to Kraiselburd's explanations. The investigating officer's investigation took over two months and concluded on October 22, 2007. After interviewing all of the witnesses and reviewing the evidence, Attorney Miranda determined that Gerald's version of the incidents was not credible, and recommended that an administrative hearing be held given that Gerald had made a sworn statement. The investigating officer even found that Gerald tried to influence the testimony of witnesses during the investigation. The investigating officer recommended that both Gerald and Kraiselburd be advised that they should refrain from using obscene language because such conduct violates the University's policies.

Secondly, Plaintiff claims that the filing of administrative charges constitutes an adverse employment action. It is uncontested that Plaintiff appealed this charge and consequently the charges have

CIVIL NO. 08-2084 (JAF/JP)      -35-

been stayed pending the appeal, and Plaintiff has not produced any evidence to the contrary. Because the administrative charge was stayed, Plaintiff has not suffered a materially adverse employment action to support her retaliation claim.

As for Plaintiff's alleged demotion to Staff Scientist and transfer to LPMG. Plaintiff has provided evidence that she was transferred to LPMG and that she was removed from her position as Scientist in Charge and placed in a position as a Staff Scientist. Defendants present evidence that after she was removed from the position of Scientist in Charge she was promoted to Associate Professor. Moreover, the evidence shows that she was removed from the position of Scientist in Charge prior to her filing her administrative complaint for sexual harassment in June 2007. At that time, she was designated to the Resident Scientist position. As such, this conduct cannot constitute a retaliatory act for the purpose of a Title VII retaliation claim. As for her transfer to LPMG, in her opposition, Defendants provided evidence and Plaintiff admitted that the transfer to LPMG was made at the recommendation of the investigating officer that Gerald be transferred to another area pending the completion of the administrative process. If anything, Defendants' decision to transfer Gerald was a precautionary measure in response to her sexual harassment complaint. See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45-46 (1st Cir. 2003)(finding no causal connection between employee's reassignment

CIVIL NO. 08-2084 (JAF/JP)       -36-

following complaint of sexual harassment and that "[i]t was a reasonable response by management to separate the alleged harasser and harassee"). Again, Plaintiff fails to meet her burden as to this claim by relying on mere unsupported, conclusory statements. See Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005)("Once the moving party in a motion for summary judgment has established that there is an absence of material facts in dispute, and that the law applicable to those facts sustains granting of that remedy, the 'party opposing summary judgment must present definite, competent evidence to rebut the motion.'")(citing Maldonado-Denis v. Castillo-Rodríquez, 23 F.3d 576, 581 (1st Cir. 1994)); Kelly v. United States, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence.").

Even assuming that Plaintiff can support her claims that she was subject to an adverse employment action, Plaintiff must still show a causal connection between the adverse employment action and her protected activity. As to this element, Plaintiff again fails to provide sufficient evidence to support a finding of causation. Gerald provides no developed, coherent arguments as to this element. See U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . 'Judges are not expected

CIVIL NO. 08-2084 (JAF/JP)      -37-

to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'")(quoting <u>Rivera-Gomez v. de Castro</u>, 843 F.2d 631, 635 (1st Cir. 1988).

After Plaintiff filed her administrative complaint, an investigating officer was designated to conduct an investigation into her claims. The investigating officer, after two months of reviewing the evidence and interviewing witnesses, recommended that Gerald be transferred to another area until the administrative process concluded. Plaintiff has not put forward evidence that Defendants' decision to transfer her was motivated by her filing a sexual harassment complaint. Accordingly, Plaintiff has not presented sufficient evidence to support a causal link between her filing of the administrative complaint and any alleged adverse employment action.

Even assuming that Plaintiff established a *prima facie* case of retaliation, Plaintiff has not met her burden of showing that the reasons proffered by Defendants for Plaintiff's transfer or alleged demotion to Staff Scientist were pretextual. Defendants' non-discriminatory reason for Plaintiff's transfer and alleged demotion was that she was transferred pending the outcome of the administrative process at the recommendation of the investigating officer. Plaintiff has provided no evidence showing that this reason was pretextual. No evidence was presented to show that the

CIVIL NO. 08-2084 (JAF/JP)      -38-

investigating officer in recommending her transfer or that the
University in implementing that recommendation acted with a
retaliatory animus. Also, while the investigating officer interviewed
Kraiselburd and credited Kraiselburd's explanation for Gerald's
removal as Scientist in Charge - that she was removed because she
failed to comply with the duties of the position - the investigating
officer also based her recommendation on interviews with Gerald's
coworkers at Cayo Santiago and the animosity that the investigation
had provoked. The investigator found that during the investigation
Gerald had attempted to influence the testimony of witnesses. The
First Circuit has explicitly stated, "Title VII was not designed to
transform courts into 'super personnel departments, assessing the
merits-or even the rationality of employers' nondiscriminatory
business decisions." <u>Feliciano de la Cruz v. El Conquistador Resort
& County Club</u>, 218 F.3d 1, 8 (1st Cir. 2000)(quoting <u>Mesnick v.
General Elec. Co.</u>, 950 F.2d 816, 825 (1st Cir. 1991)). Thus,
Plaintiff has failed to provide sufficient evidence to support that
Defendants' articulated non-discriminatory reason was pretextual.
Having failed to meet her burden, Plaintiff cannot state a claim for
Title VII retaliation.

### 4. *Constructive Discharge*

Plaintiff claims that she was constructively discharged from her
employment with the University. "Constructive discharge" is defined
as "harassment so severe and oppressive that staying on the job while

CIVIL NO. 08-2084 (JAF/JP)      -39-

seeking redress-the rule save in exceptional cases-is intolerable."
Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st
Cir. 2003)(internal quotations omitted). According to the First
Circuit, "[t]o prove constructive discharge, a plaintiff must usually
'show that her working conditions were so difficult or unpleasant
that a reasonable person in [her] shoes would have felt compelled to
resign.'" Id. (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28
(1st Cir. 2002)). Moreover, the First Circuit explained that "the
standard is an objective one; an employee's subjective perceptions
do not govern." Id.

In the instant case, Plaintiff claims that she was
constructively discharged because: (1) she was demoted to Staff
Scientist and exiled to the LPMG with no work to do in a position
that did not exist; (2) her $800 monthly bonus was eliminated; (3)
she had additional costs in gasoline and tolls; (4) her commuting
time increased substantially; (5) she had no access to subjects, and
thus, she had no possibility of "doing science"; and (6) she suffered
from clinical depression and family problems. In her resignation
letter, Gerald states that she was forced to resign because of the
treatment and conditions at work. Increased commuting time and
additional gasoline and toll costs can hardly be taken as evidence
of harassment. Moreover, unsupported allegations of clinical
depression and vague allegations of family problems do not constitute
harassment. See Wagner v. Devine, 122 F.3d 53, 55 n. 4 (1st Cir.

CIVIL NO. 08-2084 (JAF/JP)      -40-

1997) (explaining that "a finding of constructive discharge ...
require[s] some showing that the challenged conduct actually was
attributable to the alleged discrimination"). From the evidence
presented, Plaintiff received a $200 bonus instead of the $800 bonus
and as a result of her promotion to Associate Professor she received
a higher salary. Furthermore, even taking all of the above-described
incidents as harassment, they do not rise to the level of an
environment so severe and oppressive that staying on the job while
seeking redress would be intolerable. Plaintiff has not shown that
her work conditions were so severe and oppressive that she was
compelled to resign. The evidence shows that she stayed for almost
a year at the University and when she left she immediately began a
new position with the NIH. From an objective perspective, Plaintiff
could have stayed at her position as an Associate Professor and Staff
Scientist while seeking redress. <u>Burlington Northern and Santa Fe
Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)(explaining that "[a]n
employee's decision to report discriminatory behavior cannot immunize
that employee from those petty slights or minor annoyances that often
take place at work and that all employees experience")). As such,
Plaintiff has failed to provide sufficient evidence from which a jury
could find that she was the victim of constructive discharge.

   **B.   <u>State Law Claims Against Defendant Kraiselburd</u>**

   Plaintiff claims that Defendant Kraiselburd is liable under
Puerto Rico Laws 17 and 69. Kraiselburd moves for summary judgment

CIVIL NO. 08-2084 (JAF/JP)        -41-

as to these claims arguing that for the same reasons that Gerald has failed to state a claim for Title VII sexual harassment, Gerald cannot succeed in her state law claims for sexual harassment and discrimination. In her opposition, Gerald does not provide any argumentation in support of her state law claims. She dismissively provides a citation to a single case in the Spanish language that discusses "standards" without explaining what those standards are or even if and how her claim meets those standards.[2] Nevertheless, having found that Plaintiff fails to provide sufficient evidence to support her federal law claims based on sexual harassment and discrimination, the Court finds that Plaintiff's state law claims against Defendant Kraiselburd also fail. See Lee-Crespo, 354 F.3d at 46 (noting that "federal and Puerto Rico laws on sexual harassment and constructive discharge are very closely aligned" and upholding "the dismissal of [employee's] state law claims on the same grounds" that the court dismissed employee's federal claims).

---

2.    The Court notes that it generously granted Plaintiff's request to exceed the page limit for her opposition so that she can adequately oppose Defendants' motion, and Plaintiff filed a thirty-six page opposition.

CIVIL NO. 08-2084 (JAF/JP)      -42-

## IV.   **CONCLUSION**

In conclusion, for the reasons herein, Defendants' motion for summary judgment is **GRANTED.** Accordingly, the Court will enter final judgment dismissing Plaintiff's complaint against Defendants.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of August, 2011.

S/JOSÉ ANTONIO FUSTÉ

JOSÉ ANTONIO FUSTÉ
UNITED STATES DISTRICT JUDGE